UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
NORMAN MAURICE ROWE, M.D., MHA.,
L.L.C., *et al.*,

                               Plaintiffs,

                                               **ORDER**
       -against-                          21 CV 6290 (WFK) (CLP)

OXFORD HEALTH INSURANCE
COMPANY, INC., *et al.*,

                               Defendants.
----------------------------------------------------------X
**POLLAK**, United States Magistrate Judge:

        On September 13, 2021, plaintiffs Norman Maurice Rowe, M.D., M.H.A., LLC ("Rowe LLC") and East Coast Plastic Surgery P.C. ("ECPS") (together, "plaintiffs") commenced this action against Oxford Health Insurance Company, Inc., Oxford Health Plans (NJ), Inc., Oxford Health Plans (NY), Inc., and Oxford Health Plans LLC (collectively, "Oxford" or "defendants") in New York Supreme Court, Queens County. (Notice of Removal ¶ 1 (ECF No. 1)). Currently pending before this Court is defendant Oxford's Motion to Compel ("Motion") certain discovery responses. For the reasons set forth below, the Court grants in part and denies in part defendants' Motion.

## FACTUAL AND PROCEDURAL BACKGROUND

        Plaintiffs allege that they are a Professional Services Company, affiliated with Dr. Norman Rowe and Dr. Charles Pierce,[1] considered by Oxford to be out-of-network providers. (Compl.[2] ¶¶ 4-5). Plaintiffs allege that by letter dated October 5, 2020, Oxford offered to pay for

---

[1] Neither Dr. Rowe nor Dr. Pierce are named individually in the case.
[2] Citations to "Compl." refer to plaintiffs' Complaint filed in New York State Supreme Court, Queens County on September 13, 2021, and attached to the Notice of Removal, filed on November 11, 2021. (ECF No. 1-1).

1

medical services rendered to patient "M.F." at an amount equal to "in-network" benefit levels. (Id. ¶¶ 6-7). Plaintiffs claim that based on Oxford's offer, they provided M.F. with medical services on November 18, 2020, and billed Oxford $300,000 for services rendered. (Id. ¶¶ 9-10, 15). Plaintiffs allege claims of breach of contract based on Oxford's ultimate reimbursement of only $6,873.85 and its failure to pay the amount allegedly agreed to or a reasonable amount. They also allege claims of unjust enrichment, quantum meruit, aiding and abetting a breach of fiduciary duty, and a violation of New York's prompt pay law.

On November 11, 2021, the case was removed to this Court (ECF No. 1), and on January 21, 2022, Oxford moved to dismiss the Complaint, arguing that the state law claims are preempted by ERISA. (ECF No. 12). At the time of this filing, the motion to dismiss is still pending and the parties have been proceeding with discovery.

More relevant to this Order, following an initial exchange of discovery requests and responses, and two conferences before this Court relating to alleged deficiencies in plaintiffs' responses to defendants' discovery requests, the Court directed counsel to submit letters by December 1, 2023, concerning unresolved discovery issues. (Order, dated Nov. 1, 2023). That date was subsequently extended by the Court to allow counsel an opportunity to resolve the disputes informally, which effort was not successful. On December 22, 2023, Oxford filed the instant letter motion (the "Motion") raising a number of disputes relating to plaintiffs' responses to Defendants' Amended Interrogatories and Requests for the Production of Documents. (Defs. Mot.[3]). Specifically, Oxford complains that plaintiffs have provided "baseless and wildly improper" objections and responses and have "improperly stonewalled" defendants' efforts to obtain relevant factual evidence. (Id. at 4). In a response dated January 5, 2024, plaintiffs

---

[3] Citations to "Defs. Mot." refer to defendant Oxford's letter motion to compel, filed December 22, 2023 (ECF No. 33).

2

explained their objections and responses (Pls. Ltr.[4]), to which defendants replied in a letter dated January 16, 2024.  (Defs. Reply[5]).

For the reasons set forth below, the Court GRANTS in part and DENIES in part Oxford's Motion.

## DISCUSSION

I. Legal Standard

Federal Rule of Civil Procedure 26(b) governs the scope of discovery in federal cases. Rule 26(b) allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Relevancy under Rule 26 has been "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in th[e] case."  Giacchetto v. Patchogue-Medford Union Free Sch. Dist., 293 F.R.D. 112, 114 (E.D.N.Y. 2013) (alteration in original) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)).  While Rule 26(b) was amended in 2015 to move proportionality language to the provision defining the scope of discovery, "[t]he 2015 amendment[ ] . . . did not establish a new limit on discovery."  ValveTech, Inc. v. Aerojet Rocketdyne, Inc., No. 17 CV 6788, 2021 WL 630910, at *2 (W.D.N.Y. Feb. 18, 2021); see also Robertson v. People Mag., No. 14 CV 6759, 2015 WL 9077111, at *2 (S.D.N.Y. Dec. 16, 2015) (explaining that the amendment "serves to exhort judges to exercise their preexisting control over discovery more exactingly"); Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment (explaining that "[r]estoring the proportionality calculation to Rule 26(b)(1) does not change the existing

---

[4] Citations to "Pls. Ltr." refer to plaintiffs' opposition in response to defendants' letter motion, filed January 5, 2024 (ECF No. 34).
[5] Citations to "Defs. Reply" refer to defendants' reply in support of defendants' letter motion, filed January 16, 2024 (ECF No. 37).

3

responsibilities of the court and the parties to consider proportionality"). Accordingly, Rule 26 as amended "constitute[s] a reemphasis on the importance of proportionality in discovery but not a substantive change in the law." Carl v. Edwards, No. 16 CV 3863, 2017 WL 4271443, at *2 (E.D.N.Y. Sept. 25, 2017) (quoting Vaigasi v. Solow Mgmt. Corp., No. 11 CV 5088, 2016 WL 616386, at *13 (S.D.N.Y. Feb. 16, 2016)).

Nevertheless, while the scope of discovery is "broad," it is not "limitless." Fears v. Wilhelmina Model Agency, Inc., No. 02 CV 4911, 2004 WL 719185, at *1 (S.D.N.Y. Apr. 1, 2004). The party seeking discovery must show that it is not engaging in "merely a fishing expedition." Carl v. Edwards, 2017 WL 4271443, at *3 (quoting Barbara v. MarineMax, Inc., No. 12 CV 368, 2013 WL 1952308, at *2 (E.D.N.Y. May 10, 2013)). The Rule requires courts to limit the extent of discovery where "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C).

II. Analysis

The Court addresses in turn each of the issues raised in the Motion and the subsequent letters.

    A. Defendants' Document Requests

        1. Plaintiffs' Redactions

Defendants complain that plaintiffs have redacted a number of documents produced in response to defendants' deficiency letter, even though the parties have entered into a Confidentiality Agreement and Stipulated Protective Order (the "Confidentiality Agreement") that this Court "so Ordered" on February 3, 2023. (ECF No. 25). Apart from there being no legal basis for these redactions, defendants contend that plaintiffs have failed to properly describe the redactions, nor do they refer to specific documents by Bates numbers, which would

allow defendants to determine what has and has not been produced in response to defendants' requests. (Defs. Mot. at 4).

In response, plaintiffs agree to re-produce the material without redactions. (Pls. Ltr. at 2). Thus, the issue is moot.

### 2. Request Nos. 4 and 5

Defendants requested copies of any and all agreements or contracts that plaintiffs, or Drs. Rowe or Pierce had with Multiplan or the Fortified Provider Network on the dates of service alleged in the Complaint. (Defs. Mot. at 4). Plaintiffs, in response, referred generally to their supplemental document production, but did not specify which documents were responsive to which requests. (Id.) Defendants seek an Order requiring plaintiffs to supplement their responses by providing the requested documentation, identifying it in their prior productions by Bates numbers, or stating that no such documentation exists. (Id.)

In response, plaintiffs contend that they are not a party to any network agreement and no such agreement exists. (Pls. Ltr. at 2). They also contend that any Multiplan agreements are not relevant. (Id.)

Plaintiffs are Ordered to supplement their responses and state that no such network agreements exist. Plaintiffs are further Ordered to provide any Multiplan agreements to defendants for the reasons stated in connection with Interrogatory No. 17, in that they rely on a Multiplan Agreement in connection with their claims. To the extent plaintiffs have already produced these documents to defendants, plaintiffs are Ordered to identify the documents in their prior production by their Bates numbers.

### 3. Request No. 6

Defendants complain that plaintiffs objected to defendants' requests for "agreements, contracts and/or communications" between plaintiffs and any debt collector/agency, as "not

5

relevant to the issues raised in the pleadings." (Defs. Mot. at 4-5). Defendants argue that this is not an appropriate objection and that they are entitled to know all efforts taken by plaintiffs to recover this purported debt. (Id.)

In response, plaintiffs contend that these documents are irrelevant because there is no mention of a debt collector or collection agency in the Complaint. (Pls. Ltr. at 2).

To the extent that plaintiffs may have recovered certain amounts toward reimbursement of the amount owed for M.F.'s surgery, the amounts are relevant to damages and clearly proportional to the needs of the case. If plaintiffs did not engage a collection agency or debt collector in connection with the amounts owed as a result of services rendered to M.F., they should so state. If they have responsive documents, they are Ordered to produce them.

    4.    <u>Request No. 7</u>

Plaintiffs also objected to Request No. 7, which sought the personnel files of Michael Manzo, plaintiffs' Medical Billing Supervisor, and Kathleen Damiano, a Medical Biller, who were identified by plaintiffs as witnesses to the purported "offer" from Oxford. (Defs. Mot. at 5). To the extent plaintiffs' objection was based on the fact that the personnel files contain personal and confidential information, defendants again point to the Confidentiality Agreement and note that the information is relevant given that these are witnesses to the case. (Id.)

In response, plaintiffs argue that defendants specifically seek "tax and payroll information," which requires a showing of "GOOD CAUSE," and that the demand is vague and overbroad because it lacks any temporal limitation. (Pls. Ltr. at 2 (emphasis in original)). Further, plaintiffs assert that the request "seeks information regarding issues not preserved on the face of the pleadings and may not be reasonably expected to yield information relevant to the allegations of the Complaint, to the proposed relief or any defense." (Id.)

6

To the extent that plaintiffs rely on an argument that only information regarding issues "preserved on the face of the pleadings" is subject to discovery, the argument is without merit. However, the Court agrees that defendants have failed to explain why the "personnel files" of non-party witnesses are relevant or proportional to the needs of the case. To the extent that plaintiffs are correct that defendants were seeking tax and payroll information, that limitation was not contained in defendants' letter motion nor have defendants made the requisite showing required for the production of tax returns, nor even provided a basis for believing that that information is relevant. Accordingly, defendants' motion seeking to compel production of this information is denied.

    5.  <u>Request Nos. 8 and 9</u>

These requests seek contracts and agreements between plaintiffs and Drs. Rowe and Pierce, which plaintiffs objected to as not relevant and containing confidential personal information. (Defs. Mot. at 5).

In response, plaintiffs raise the same arguments as to "information not preserved on the face of the pleadings," which is not a proper objection. (Pls. Ltr. at 3). They also contend that the demand seeks information beyond the time of the occurrence and that the doctors are not parties to the case. (<u>Id.</u>)

Since the plaintiffs are claiming "affiliation" with these doctors (Defs. Mot. at 5), and their relationship with plaintiffs is an integral part of plaintiffs' claim that Oxford entered into an agreement with them, the objection as to relevance is without merit and the objection based on claims of confidentiality is mooted by the existence of the Confidentiality Agreement. To the extent plaintiffs seek to limit the time period for any such agreements to the time period related to the dates of service, the Court finds that such a limitation is unreasonable given that the plaintiffs and the doctors appear to have had an affiliation prior to the treatment of M.F.

7

Accordingly, plaintiffs are Ordered to provide any contracts and agreements between plaintiffs and the doctors entered into prior to and remaining in effect at the time of M.F.'s treatment.[6]

      6.     Request Nos. 19 and 20

In the Complaint, plaintiffs allege that Oxford "directly benefitted by ROWE providing medical services to M.F. based on Oxford's promise of payment in the form of goodwill, the value attributed by Oxford to the expectancy of M.F.'s continued customer patronage." (Compl. ¶ 45). Based on this allegation, defendants seek production of documentation supporting plaintiffs' allegations relating to patient perception, good will, and continued patronage, to which plaintiffs responded that Oxford possesses all that information. (Defs. Mot. at 6). Defendants now move to compel, seeking an order requiring plaintiffs to produce the documentation or to indicate that no such documentation exists; they also seek to have plaintiffs withdraw this paragraph from the Complaint. (Id.)

In response, plaintiffs assert that defendants possess this information and have not produced it in response to plaintiffs' demand for the same. (Pls. Ltr. at 3). Plaintiffs further represent that they "do not have this material." (Id.)

To the extent that plaintiffs have no responsive documents in their possession, custody, and control, they are Ordered to supplement their responses to so state.

      7.     Request No. 21

This request asked for documents listing the costs incurred in providing the surgical services to M.F. (Defs. Mot. at 6). Plaintiffs objected on relevance grounds. (Id.)

---

[6] To the extent that plaintiffs' response also contains an objection that "defendant has not established how their payroll and tax documents are relevant" (Pls. Ltr. at 3), there is nothing in the Request that asks for that information, so the objection is nonsensical and appears to have been copied from the response to Request No. 7.

8

In response, plaintiffs again raise the improper objection that the demand seeks information not preserved on the face of the Complaint, and that the information is not relevant. (Pls. Ltr. at 3).

To the extent that plaintiffs argue that the amount paid by Oxford was not "reasonable" or comparable to what other doctors are paid (Defs. Mot. at 6), the reasonableness of plaintiffs' costs and fees are clearly relevant not only to plaintiffs' claim for their full billed charges, but to their unjust enrichment claim as well. Plaintiffs, however, claim that they "do not maintain any documentation that explains or lists the [$300,000] in costs incurred in providing the surgical services to M.F." (Pls. Ltr. at 3). Although it is unclear then how plaintiffs intend to draw a comparison between the costs they incurred with those charged and incurred by other physicians performing similar procedures in order to challenge Oxford's payment as unreasonable, plaintiffs are Ordered to supplement their responses to state that they have no documents responsive to this request. Any documents later produced to explain the basis for their charges and costs will be precluded.

        8.     <u>Request No. 22</u>

Plaintiffs also objected on relevance grounds to defendants' request for documentation and communications relating to plaintiffs' efforts to collect payment directly from M.F., including payments for deductibles, co-insurance, and copayments required by M.F.'s health benefit plan. (Defs. Mot. at 6). Defendants contend that this information is relevant because a patient may not collect any benefits until her cost-share obligations are satisfied. (<u>Id.</u>)

In response, plaintiffs indicate that they have produced all responsive documentation they maintain, but they agree to reproduce those documents in unredacted form. (Pls. Ltr. at 3).

To the extent that plaintiffs have no additional documents, they are Ordered to supplement their responses to state as much. To the extent plaintiffs have already produced these

9

documents to defendants, plaintiffs are Ordered to identify the documents in their prior production by their Bates numbers.

        9.     Request Nos. 23 and 24

Plaintiffs objected to defendants' requests for documentation demonstrating payments received from other insurance carriers for the same CPT codes for other patients who are members of health benefit plans funded or administered by these other carriers. (Defs. Mot. at 7). Defendants contend that this information is relevant to evaluate whether the payment received was "reasonable" and comparable to what other surgeons charge for similar procedures and what plaintiffs have received from other carriers. (Id.)

Again, in response, plaintiffs objected on grounds that the information is not "preserved on the face of the pleadings." (Pls. Ltr. at 4). Given that they have raised an improper objection to this request, the Court Orders plaintiffs to provide such documentation, but limited to the time period covered by M.F.'s treatment.

        10.    Request No. 25

Plaintiffs objected on relevance grounds to defendants' request for agreements that plaintiffs or the individual doctors had with other carriers where they agreed to be included in the other carriers' network of treating providers. (Defs. Mot. at 7). Defendants contend that this information is relevant to know what plaintiffs have agreed to accept from other carriers, given the allegation that the amount received from Oxford was "not comparative" to what other surgeons were paid. (Id.)

In response, plaintiffs raise the same improper boilerplate objections. (Pls. Ltr. at 4). They are directed to respond to this Request.

B.     Defendants' Interrogatories

Defendants also seek to compel additional responses to defendants' Amended Interrogatories. As an initial matter, defendants complain that in responding to defendants' Amended Interrogatories, plaintiffs failed to comply with Fed. R. Civ. P. 33(b)(5), and attached a certification that was not signed by Mr. Manzo as required by the Rule. (Defs. Mot. at 7).

Plaintiffs have agreed to provide signed responses in accordance with the Rule. (Pls. Ltr. at 4). They are Ordered to do so. The Court addresses issues pertaining to specific interrogatory responses below.

1.     Interrogatory No. 2

Defendants' Interrogatory No. 2 asked plaintiffs to identify all of the communications between the parties relating to the services provided to M.F. (Defs. Mot. at 8). According to defendants, plaintiffs identified one telephone call only, which defendants contend is contrary to the documents plaintiffs produced which show other communications. (Id.)

In response, plaintiffs claim that they have already provided copies of the written communications and identified the telephone conversations between the parties. (Pls. Ltr. at 4).

Plaintiffs are Ordered to review their documents and supplement this response if appropriate. Otherwise, they are directed to supplement their response by indicating that all relevant information has been provided and by identifying the responsive documents by Bates number where applicable.

2.     Interrogatory No. 3

In this interrogatory, defendants asked plaintiffs to identify in what form the network exception was "issued." (Defs. Mot. at 8). The response – "GAP was approved on October 7, 2020, call ref # 02648325" – does not appear responsive to the interrogatory.

11

In response, plaintiffs explain that the word "call" in the response refers to a telephone call and that the communication was "oral." (Pls. Ltr. at 4).

Plaintiffs are Ordered to supplement their response and explain this in clearer terms.

3.   Interrogatory No. 4

Defendants asked plaintiffs to explain what they meant in paragraph 7 of the Complaint by their allegation that Oxford would pay claims at "'in-network benefit' level[s]." (Defs. Mot. at 8). Plaintiffs responded that they thought they would be reimbursed "as if we were in-network providers." (Id.)

It is unclear exactly why defendants find this answer insufficient. Accordingly, the Court finds that plaintiffs have responded adequately and if defendants seek more information or clarification, they can pursue that issue during depositions.

4.   Interrogatory Nos. 7 and 10

These requests ask plaintiffs to identify what they relied on in alleging that the "in-network reimbursement rate" is 80% of the billed amount, to which they responded, "based on our past history working with Oxford and a prior agreement we had with Multiplan that Oxford rec." (Id.)

To the extent that defendants seek additional information regarding the "past history" referred to by plaintiffs, defendants may ask witnesses about this or request documents (if they have not already done so) that might shed further light on the basis for plaintiffs' belief. To the extent that the response seems to drop off after "Oxford rec." and appears to be incomplete, plaintiffs are Ordered to explain and/or supplement their response.

5.   Interrogatory No. 11

In this interrogatory, defendants asked plaintiff to "identify the benefit purportedly conferred on Defendants as alleged in paragraph 45 of the Complaint and the factual basis for

12

this statement." (Defs. Mot. at 8). Defendants contend that plaintiffs' response that "Defendant was able to claim to their insured that it arranged a surgery" with an out-of-network doctor who could perform the surgery with minimal scarring, does not identify the form in which defendants made this claim or when, and therefore, plaintiffs should supplement their response. (Id. at 8-9).

In response, plaintiffs contend that they never alleged that defendants made this claim to the patient, only that defendants were provided with the capacity to make the claim. (Pls. Ltr. at 5).

Plaintiffs are directed to state this in their supplemental responses to defendants' interrogatories. Plaintiffs do not need to respond further at this time, but defendants are free to inquire during depositions.

6. <u>Interrogatory No. 13</u>

In response to the request that plaintiffs identify any employee with knowledge of this matter, plaintiffs objected on the grounds that the term "this matter" is "overbroad." (Defs. Mot. at 9). Since it is clear that the interrogatory seeks information relating to the claims at issue in this lawsuit and the underlying background, plaintiffs' objection is overruled and plaintiffs are Ordered to respond.

7. <u>Interrogatory No. 14</u>

In this interrogatory, defendants asked plaintiffs to "identify the parties to the promise alleged in paragraph 49 of the Complaint, as well as the form of the promise." (Id.) Defendants complain that plaintiffs' response – "Oxford and us"[7] – is insufficient in that it fails to identify the date of the communication, the name and address of each participant and persons present at the time, where the communication occurred, and a summary of what was said by each party.

---

[7] In their response, plaintiffs note that defendants have a recording of the call. (Pls. Ltr. at 5).

13

(Id.)  Defendants claim that in its general definition section, "identify" is defined as asking for each of these categories of information.  (Id.)

Given that defendants have used the term "identify" in at least twelve of the interrogatories in dispute, and there are five questions incorporated into each of the interrogatories using this definition, that amounts to a total of 60 questions, including subparts, not even considering the other interrogatories which are not at issue or do not include this term.  Moreover, to the extent that defendants seek a summary of what each participant said in every conversation, this type of narrative question is better explored during depositions.

Accordingly, the Court denies defendants' request to require supplementation of this interrogatory and finds it a more appropriate subject for a deposition inquiry.

### 8. Interrogatory No. 15

This interrogatory asked plaintiffs to identify the "factual basis for Plaintiffs' statement that Oxford was legally obligated to pay for the medical services received by M.F. from Rowe." (Defs. Mot. at 9).  Defendants complain that plaintiffs' response included "unsupported allegations related to their beliefs without pointing to any factual evidence."  (Id.)

In response, plaintiffs note that their response stated that Oxford "made a promise when they gave us an in-network exception," citing the letter that Oxford issued stating the services were medically necessary, authorizing the services, and agreeing to pay.  (Pls. Ltr. at 5).

Plaintiffs may supplement this response if they have anything to add, but otherwise the Court finds the response sufficient.

### 9. Interrogatory No. 16

This interrogatory asked plaintiffs to identify any communication in which M.F. told plaintiffs about her perception that Oxford facilitated her receipt of services, and Oxford's opportunity to "showcase its product" as alleged in paragraph 45 of the Complaint. (Defs. Mot.

14

at 9).  Since plaintiffs did not refer to any specific communication, defendants seek an Order requiring plaintiffs to state if M.F. ever informed plaintiffs of the purported perception.  (Id.)

In their response, plaintiffs confirm that they never alleged that M.F. made any such communication.  (Pls. Ltr. at 5).

Although the interrogatory technically never asked for that information, since plaintiffs are required to supplement their responses otherwise, the Court directs plaintiffs to confirm that there were no such communications from M.F.

### 10.     Interrogatory No. 17

This interrogatory asked plaintiffs to identify "the specific communication" relied on in asserting that defendants promised to pay 80% of the billed amount.  (Defs. Mot. at 10). Plaintiffs' response was that the basis was their past Multiplan contract, prior dealings between them and Oxford, and telephone conversations between Oxford's and plaintiffs' employees. (Id.)  Defendants again recite the definition of "identify" and contend that plaintiffs must provide the information set forth in the definition.  (Id.)

As noted in the Court's ruling with respect to Interrogatory No. 14, if required to respond accordingly with respect to each of the interrogatories where defendants use the term "identify," the number of interrogatories would be disproportionate to the needs of the case and the Court would direct plaintiffs to respond only to the first 25 (inclusive of subparts).[8]  Thus, the request for an Order to supplement is denied.

Defendants raise a separate argument – namely, that plaintiffs have not produced their Multiplan Contract.  (Id.)  To the extent plaintiffs intend to rely on this document, it should be produced prior to depositions.  (See ruling supra para.A.2).

---

[8] Under this scenario, it is doubtful plaintiffs would have had to respond to any interrogatories past No. 8.

15

      11.      <u>Interrogatory No. 19</u>

This interrogatory seeks information similar to Document Request No. 6. (Defs. Mot. at 10). As with the Document Request, plaintiffs objected on relevance grounds. The Court finds this information relevant and Orders plaintiffs to respond.

      12.      <u>Interrogatory No. 20</u>

This interrogatory asks if plaintiffs have transferred, encumbered, or assigned the debt relating to services provided to M.F. (Defs. Mot. at 10). Plaintiffs objected on relevance grounds, contending the interrogatory is improper. (<u>Id.</u>) The Court disagrees and Orders plaintiffs to respond.

      13.      <u>Interrogatory No. 22</u>

In response to defendants' request for the costs incurred in providing services to M.F., plaintiffs responded "economic and financial cost, including capital costs and recurrent costs." (Defs. Mot. at 11). This information is highly relevant to damages and plaintiffs are Ordered to provide a more detailed response or be precluded from arguing costs as damages.

      14.      <u>Interrogatory No. 23</u>

Plaintiffs objected to defendants' request to "[i]dentify any communications and/or agreements between the Plaintiffs and M.F. related to the Plaintiffs, including their employee/independent contractor physicians, status as a non-participating provider," on the grounds that it was "unintelligible and irrelevant." (Defs. Mot. at 11).

In response, plaintiffs concede that they objected on the grounds that the interrogatory was "unintelligible," and state that they "do not comprehend what the interrogatory seeks." (Pls. Ltr. at 6).

To the extent the defendants have now explained the inquiry to be seeking communications with M.F. about plaintiffs' status as out-of-network providers, the Court finds

16

that the information is relevant. However, the Court agrees that the interrogatory as framed originally is "unintelligible." (Id.) Since the request seeks to explore any communications with the patient and calls for a narrative response, the Court denies the request for supplementation and directs the defendants to ask these questions at deposition.

        15.     <u>Interrogatory No. 24</u>

The final interrogatory asked plaintiffs to explain how they calculated the charges included in the health insurance claim forms, to which plaintiffs responded that they "multiplied the price for the procedure times the number of units." (Defs. Mot. at 11). The interrogatory also asked for plaintiffs to include "the factual basis for the amount of the charge," which plaintiffs objected to by saying the phrase "has no meaning" and that "the charge is the charge." (Pls. Ltr. at 6-7). Defendants complain that what they were really looking for was "how the charges (i.e., prices) are calculated (i.e., what do plaintiffs rely on to determine the prices and/or how do they determine their prices)." (Defs. Mot. at 11).

This request is highly relevant to the issue of damages calculations. Since plaintiffs inadequately responded to the interrogatory and defendants have now provided more detail on their request, plaintiffs are Ordered to supplement their response to the clarified interrogatory.

        C.     <u>Rule 11 Sanctions</u>

In their reply, defendants argue that plaintiffs violated Rule 11 of the Federal Rules of Civil Procedure because they did not have a good faith basis to assert the allegations in paragraph 45 of their Complaint, which claims that defendants were unjustly enriched by their promise of payment in the form of M.F.'s goodwill and continued patronage. (Defs. Reply at 4, 6). Specifically, plaintiffs respond to defendants' Document Request Nos. 19 and 20, and defendants' Interrogatory No. 16, stating that they do not have information related to this claim

17

and that defendants possess the information. (Pls. Ltr. at 3, 5). Defendants thus ask the Court to Order plaintiffs to withdraw these allegations as baseless. (Defs. Reply at 4, 6).

Considering plaintiffs' argument that defendants have information that would potentially support this claim, and it appears plaintiffs claim this as an argument for unjust enrichment rather than a factual allegation of a specific conversation, the Court declines to order sanctions under Rule 11 and declines to direct plaintiffs to withdraw the claim from the Complaint at this time.

CONCLUSION

For the reasons set forth above, Oxford's Motion to Compel is GRANTED in part and DENIED in part. Specifically, plaintiffs are compelled to: (1) respond or supplement their responses to defendants' Request for Production Nos. 4, 5, 6, 19, 20, 21, 22, and 25; and defendants' Interrogatory Nos. 2, 3, 7, 10, 11, 13, 16, 19, 20, 22, and 24; (2) provide to defendants responsive documents to Request for Production Nos. 4, 5, 6, 8, 9, 23, 24, and 25; and (3) to the extent plaintiffs contend they have already produced certain documents to defendants, plaintiffs are Ordered to include in their supplemental responses the Bates numbers of the previously-produced documents. Oxford's Motion is denied in all other respects. To the extent that plaintiffs have been Ordered to supplement their discovery responses, they are Ordered to do so on or before October 28, 2024. By October 28, 2024, the parties are to submit a joint status report setting out dates for all fact depositions to be completed by January 17, 2025.

**SO ORDERED.**

Dated: Brooklyn, New York
September 27, 2024

Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York